IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JERROD ANTONIO HEATH, as Administrator of the Estate of Christopher Darnell Heath, Deceased; and CRISHAUN HEATH, CHRISTEN HEATH, and JAYLON WALKER, as Surviving Children of Christopher Darnell Heath,

    Plaintiffs,

v.

BRIAN ADAMS, Warden, et al.,

    Defendants.

CV 622-070

**O R D E R**

Presently pending before the Court is Defendants Brian Adams, Joseph Barnes, Quan Jackson, Robert Maddox, Kathy Martin, Andrew McFarlane, Alicia Epperson, Vashti Brown, Jennifer Jarriel, Victoria Weston, Sharon Osborne, Curtis Whitfield, Michael Hartmeyer, Robert Toole, Ahmed Holt, Stan Shepard, Eric Cox, Janice Hill, Travis Benford, Willie Dismuke, Mark Shelby, Steven McDaniel, Devon Brown, Edward Moore, and Michael Davis's motion to dismiss. (Doc. 6.) Upon due consideration, Defendants' motion is **DENIED AS MOOT**.

## I. BACKGROUND

On September 16, 2022, Plaintiffs filed suit in this Court pursuant to 42 U.S.C. §§ 1983, 1988; 28 U.S.C. § 1331; and 28 U.S.C. § 1343, and the Eighth and Fourteenth Amendments of the United States Constitution. (Doc. 1, at 2.) Plaintiff Jerrod Antonio Heath is the duly appointed Administrator of the Estate of his brother, Christopher Darnell Heath (the "Deceased"). (Id. at 3.) Plaintiffs Crishaun Heath, Aubree Heath, and Jaylon Walker are the natural children of the Deceased. (Id.)

During the times relevant to the suit, the Deceased was an inmate at Smith State Prison in Glennville, Georgia. (Id. at 12.) He was previously incarcerated in the Georgia Prison System and attempted suicide numerous times prior to his incarceration at Smith State Prison. (Id.) Plaintiffs allege Defendants were aware of the Deceased's prior suicide attempts as well as his complicated and significant mental health condition and diagnosis of Major Depressive Disorder with Psychosis ("MDD") and Bipolar Disorder ("BPD"). (Id. at 13.) The Deceased's prior mental health history, including his numerous suicide attempts, were well documented in his incarceration files. (Id.) However, when the Deceased was transferred to Smith State Prison in 2015, no mental health evaluation was performed. (Id.)

On September 18, 2020, the Deceased suffered a mental health crisis and attempted suicide by hanging himself from a gate. (Id.)

2

Defendants provided no mental health care to him after this attempt. (Id. at 13-14.) Further, no incident report was filed, in violation of standard operating procedures. (Id. at 14.) On October 5, 2020, the Deceased saw Dr. Mohamed Hassaballa for a physical examination, but despite his mental health history and recent suicide attempt, no mental health screening was conducted. (Id.) Dr. Hassaballa listed the Deceased as a "1" on the psychiatric scale, which correlates to "no psychiatric disorder." (Id.) On December 9, 2020, Dr. Hassaballa had another encounter with the Deceased due to his "altered mental status," and despite an abrupt change in his mental status, Dr. Hassaballa did not seek a mental health evaluation and instead assumed the Deceased was exhibiting signs of methamphetamine abuse. (Id. at 14-15.)

After this encounter, Defendants dragged the Deceased from his cell to the shower, not to take a shower, but to be housed there, in clear violation of Georgia Department of Corrections ("GDOC") policy. (Id. at 15.) Despite exhibiting signs of a mental health crisis, Defendants assumed the Deceased was on drugs, despite his cellmate indicating he did not do drugs. (Id.) The Deceased remained trapped in the shower for days without access to a toilet or toilet paper, regular meals, fresh air, a bed, or a mattress, and Defendants provided no medical or mental health care. (Id.) However, the Deceased had a belt in the shower. (Id.)

On December 10, 2020 at 12:18 P.M., Defendant Sharon Osborne saw the Deceased in the shower unresponsive. (Id.) In her presence, he laid down on the shower floor, made sounds with his mouth, and shook his head up and down as if he were convulsing or twitching. (Id. at 15-16.) Rather than call for help, Defendant Osborne went to her office and sent an email to Defendants Adams, McFarlane, Whitfield, Hartmeyer, Cox, Weston, Martin, and Brown about the Deceased's convulsing and the disturbing scene. (Id. at 16.) Most of the Defendants ignored the email and did nothing; however, Defendant Martin responded saying the Deceased had been in the medical ward the day before and was under the influence of drugs. (Id.) Despite this statement, Defendant Martin did not check the drug screen conducted the day before which would have shown the Deceased was negative for any drugs. (Id.) All Defendants ignored the Deceased as he lay dying in the shower. (Id. at 17.) Furthermore, Defendants falsified their census counts of Building H-1 to show the Deceased was in a cell instead of in the shower where Defendants kept him for at least 34 hours. (Id.)

On December 11, 2020, a fellow inmate assigned to the job of "orderly" found the Deceased hanging in the shower after an attempt to pass a meal tray to him was unsuccessful. (Id.) The Deceased's body blocked the flap at the bottom of the shower door. (Id.) The orderly summoned the Unit Manager who radioed for assistance, and the Deceased's body was removed from the shower. (Id.) Dr.

4

Hassaballa found the Deceased with no blood pressure, no pulse, not breathing, no heartbeat, no pupil reflexes, pale, and cold and accused him again of methamphetamine abuse. (Id.) The doctor noted the Deceased "likely had brain death by the time first seen by medical team." (Id.) Some attempts at CPR were made and an ambulance was called at 8:58 A.M. (Id. at 17-18.) The ambulance left Smith State Prison at 9:42 A.M. and arrived at Evans Memorial Hospital Emergency Room at 9:55 A.M., an hour after the Deceased was removed from the shower. (Id. at 18.) The Deceased was pronounced dead at 10:02 A.M. although it was noted he was dead before arrival at the hospital. (Id.) During the week preceding December 11, 2020, Plaintiff Jerrod Antonio Heath made numerous calls to the Warden at Smith State Prison and his staff expressing concerns about his brother's safety and health. (Id.)

Plaintiffs allege claims of: (1) intentional violation of a clearly established constitutional right under 42 U.S.C. § 1983; (2) negligent training and negligent supervision; (3) intentional infliction of emotional distress; (4) punitive damages; and (5) attorneys' fees. (Id. at 18-32.) On November 15, 2022, Defendants moved to dismiss the Complaint as an impermissible shotgun pleading and because Plaintiffs' claims are barred by Eleventh Amendment immunity and state law sovereign immunity. (Doc. 6; Doc. 6-1, at 3-12.) Plaintiffs responded in opposition (Doc. 8), and Defendants

replied in support (Doc. 11). Based on this, the motion has been fully briefed and is ripe for the Court's consideration.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint

6

pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. DISCUSSION

The Court addresses Defendants' arguments for dismissal in turn.

### A. Shotgun Pleading - Count I

Defendants first move to dismiss Plaintiffs' Eighth Amendment claim, Count I, as an impermissible shotgun pleading. (Doc. 6-1, at 3.) They argue this section of the Complaint reincorporates all preceding paragraphs. (Id. at 5.) Further, they argue Plaintiffs assert this claim against multiple Defendants without specifying which of the twenty-five Defendants is responsible for an act or omission. (Id.) Defendants assert that while a few of the circumstances surrounding the Deceased's death include specific actions or inactions of a few Defendants, the majority of the claim does not mention the other twenty-five Defendants, so they are unable to know what they have allegedly done or not done. (Id.) Plaintiffs continually refer to "Defendants" without specifying which Defendant is responsible for the allegation. (Id. at 5-6.) In response, Plaintiffs assert their Complaint is as

detailed as possible without the benefit of discovery. (Doc. 8, at 3.) Plaintiffs argue "for this Court to require more than what was already contained in their 171 paragraph Complaint in their initial filing would be tantamount to granting Defendants Judgment as a Matter of Law before the case has even started. That is inherently unfair." (Id.) In their reply, Defendants reiterate that Plaintiffs violated the shotgun pleading rules by reincorporating preceding paragraphs and by asserting multiple claims against multiple Defendants without specifying which Defendant is responsible for which act or omission. (Doc. 11, at 1-2.) The Court addresses the Parties' arguments below.

1. Legal Standard

The Eleventh Circuit is particularly opprobrious of what are known as "shotgun pleadings," or pleadings that violate Rules 8(a)(2) or 10(b). See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320-21 (11th Cir. 2015) (recognizing the Eleventh Circuit's "thirty-year salvo of criticism aimed at shotgun pleadings"); Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) ("Courts in the Eleventh Circuit have little tolerance for shotgun pleadings."). There are four types of shotgun pleadings: first, those "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before . . . ." Weiland, 792 F.3d at 1321. The second type is "replete with

conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1322. Third are those that do not separate each claim into a separate count. See id. at 1322-23. Fourth is the "relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts . . . or which of the defendants the claim is brought against." Id. at 1323.

2. Analysis

After reviewing Plaintiffs' Eighth Amendment claim (Count I), the Court finds it commits the sins of a shotgun pleading. (See Doc. 1, at 18-28.) First, it reincorporates all previous allegations from the Complaint. (Id. ¶ 111.) Second, the claim never identifies which Defendants committed which alleged violations. Plaintiffs allege the Defendants *all* observed the Deceased in the shower, "Defendants knew it was illegal to house an inmate in a shower for days," Defendants' intentional inaction to intervene and remove the Deceased from inhumane conditions violates the Eighth Amendment, and many other things, referring to Defendants as a collective group. (Id. at 22-28.) These generalized grievances continue throughout Count I and illustrate Plaintiffs committed the fourth sin by failing to specify which Defendants are responsible for which allegations. See Weiland, 792 F.3d at 1323. While Count I enumerates a few of the individual Defendants, alleging, conclusively, each was "directly involved in

9

the illegal housing of [the Deceased]", it does not provide enough description for the Court to determine which allegations apply to which Defendant in terms of the overall claim. (See Doc. 1, ¶¶ 112, 114, 116, 118.) Furthermore, Count I does not mention allegations linked to each of the twenty-five Defendants, despite Plaintiffs stating "[t]he Defendants, each of them, engaged in actions and conduct, the result of which was the violation of [the Deceased's] rights as guaranteed by virtue of the Constitution." (Id. ¶ 152.)

The purpose of Rules 8(a)(2) and 10(b) is to allow a defendant to discern what a plaintiff is claiming and frame a responsive pleading and to allow the Court to determine whether a plaintiff has stated a claim for which relief can be granted. See Weiland, 792 F.3d at 1320. Shotgun pleadings, like Count I, frustrate this policy. The Court is not required to "sift through the facts presented and decide for [itself] which [are] material." Beckwith v. Bellsouth Telecomms. Inc., 146 F. App'x 368, 372 (11th Cir. 2005) (quotation and citation omitted). "When faced with a shotgun pleading, a district court must *sua sponte* give the plaintiff at least one chance to replead a more definitive statement of her claims before dismissing her case with prejudice." Embree v. Wyndham Worldwide Corp., 779 F. App'x 658, 662 (11th Cir. 2019) (citing Vibe Micro, 878 F.3d at 1296). Since Count I is a shotgun pleading, Plaintiffs shall have an opportunity to replead this

count through an amended complaint. Plaintiffs should take care to eliminate extraneous material and ensure it is clear to which Defendant particular factual allegations apply.

The Court will also address Plaintiffs' argument regarding their inability to provide more details without discovery. As the Supreme Court held in Iqbal, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citation omitted). "[A] significant premise underlying Twombly and Iqbal is that a plaintiff ought not get a ticket to discovery - with its attendant burden and expense - unless the plaintiff can allege facts sufficiently supporting a claim." Brannan for Estate of Goodman v. West, No. CA 17-0493, 2018 WL 1440835, at *3 (S.D. Ala. Mar. 22, 2018) (citation omitted). As such, Plaintiffs cannot baselessly assert allegations against "all Defendants" with the hope discovery will reveal something about all named Defendants. In their amended complaint, Plaintiffs must plead with specificity which factual allegations apply to which Defendants, linking each Defendant to facts they are capable of responding to.

**B. Eleventh Amendment Immunity & State Law Sovereign Immunity – Counts II and III**

Next, Defendants move to dismiss Count II (Negligent Training and Negligent Supervision) and Count III (Intentional Infliction of Emotional Distress) of Plaintiffs' Complaint as barred by the Eleventh Amendment and state law sovereign immunity. (Doc. 6-1, at 6.) Specifically, Defendants argue the Eleventh Amendment, sovereign immunity, and the Georgia Tort Claims Act ("GTCA") bar Plaintiffs' state law claims. (Id. at 6-12.) In opposition, Plaintiffs again assert their Complaint was as detailed as possible based on their current knowledge. (Doc. 8, at 4.) Additionally, they argue compliance with Georgia's state law ante litem provision is unnecessary because it cannot constitutionally be applied to this § 1983 action. (Id. at 6.) Plaintiffs specify this case is only against individual defendants, not the State of Georgia, and no claim under the GTCA is alleged. (Id.) In their reply, Defendants argue Plaintiffs' "response in no way undermines any argument Defendants made" in their motion to dismiss, so the Complaint should be dismissed. (Doc. 11, at 2.)

1. Legal Standard

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any

12

foreign state." U.S. CONST. amend. XI. Controlling interpretations of the Eleventh Amendment firmly "establish that an unconsenting [s]tate is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (citation and internal quotation marks omitted). Eleventh Amendment immunity equally applies to state's agencies and departments. Id. Furthermore, the immunity "remains in effect when [s]tate officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985). The Eleventh Amendment bars § 1983 suits absent state waiver of immunity or congressional override.

2. Analysis

Defendants argue the Eleventh Amendment bars Plaintiffs' state law claims. (Doc. 6-1, at 6-9.) Specifically, they argue the State of Georgia has not consented to tort actions against its departments, agencies, or their employees; thus, this action should be dismissed. (Id. at 8-9.) Plaintiffs argue the case is against individuals only, not the State of Georgia. (Doc. 8, at 6.) Count II brings a claim of negligent training and negligent supervision but does not specify under which statute these allegations are brought. (Doc. 1, at 28-31.) However, based on Plaintiffs' response to Defendants' motion to dismiss, they state their claims are all asserted under § 1983. (See Doc. 8, at 7

13

("Federal courts may not require exhaustion of state administrative or judicial remedies in a Section 1983 action for damages for deprivation of a constitutional right.").)

"[T]he Eleventh Amendment bars federal suits against state officials in their 'official capacity' because such actions seek recovery from state funds." Hobbs v. Roberts, 999 F.2d 1526, 1528 (11th Cir. 1993) (citing Graham, 473 U.S. at 169). "Sovereign immunity also applies to state officials 'acting in their official capacity,' but it does not apply to officials 'sued in their *individual* capacities under Section 1983.'" Wilson v. Dunn, 618 F. Supp. 3d 1253, 1268-69 (N.D. Ala. 2022) (citations omitted and emphasis in original). "Eleventh Amendment immunity may still shield defendants sued in their individual capacities 'if the state is the real, substantial party in interest.'" Id. at 1268 (quoting Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1577 (11th Cir. 1994)).

> The general test for determining whether the state is the real party in interest, even though it is not a named defendant, is whether the relief sought against the nominal defendant would in fact operate against the state, especially by imposing liability damages that must be paid out of the public fisc.

Jackson, 16 F.3d at 1577 (citations omitted). There is no indication in Plaintiffs' Complaint that they are seeking recovery from the state of Georgia. In fact, Plaintiffs' Complaint states it seeks "a judgment for damages against Defendants individually

for medical expenses and pain and suffering." (Doc. 1, at 33.) Therefore, the Court does not find the state is a real party in interest here. As such, and because Plaintiffs are not suing any of the Defendants in their official capacities, the Eleventh Amendment and sovereign immunity are inapplicable.

C. Shotgun Pleading - Entire Complaint

Although Defendants only mention Count I in their arguments regarding shotgun pleadings, the Court find the entirety of Plaintiffs' Complaint violates the shotgun pleading guidelines. When analyzing Defendants' motion regarding Counts II and III, the Court had much difficulty discerning which claims apply to which Defendants. As such, the Court finds Plaintiffs' entire Complaint requires repleading.

Specifically, Counts II, III, IV, and V all reincorporate all prior allegations of the Complaint. (Doc. 1, ¶¶ 153, 166, 168, 170.) This violates the first sin because "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before . . . ." Weiland, 792 F.3d at 1321. Additionally, Counts II and III fail to differentiate which Defendants are liable for which acts. (Doc. 1, at 28-31.) This violates the fourth sin by "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts . . . or which of the defendants the claim is brought against." Weiland, 792 F.3d at 1323. In Count

15

II, Plaintiffs mimic what they did in Count I by providing a couple of allegations linked to specific Defendants; however, the majority of the claim refers to "Defendants" collectively, making it impossible to know which of the twenty-five Defendants are responsible for which allegations. (See Doc. 1, at 28-31.) In Count III, Plaintiffs fail to specifically list any single Defendant; instead, they simply allege "[t]he facts as demonstrated above show that [D]efendants intentionally inflicted emotional distress on [the Deceased]." (Id. at 31.) As the Court detailed above, shotgun pleadings, like this Complaint, frustrate the purpose of Rules 8(a)(2) and 10(b) which allow a defendant to discern what a plaintiff is claiming and frame a responsive pleading. See Weiland, 792 F.3d at 1320.

Based on the Court's findings, the Court will "sua sponte give the plaintiff [a] chance to replead a more definitive statement of her claims before dismissing her case with prejudice." Embree, 779 F. App'x at 662 (citing Vibe Micro, 878 F.3d at 1296). Plaintiffs should take care to eliminate extraneous materials and ensure it is clear to which Defendant particular factual allegations apply when drafting each Count of their amended complaint.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs shall file an amended complaint within **FOURTEEN (14) DAYS** of the date of this Order. Having given Plaintiffs an opportunity to amend their complaint, Defendants' motion to dismiss (Doc. 6) is **DENIED AS MOOT**.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of September, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA